## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

DANIEL GALBRAITH and
SARAH GALBRAITH,

    Plaintiffs,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)

CJ - 2016 - 40 63

Case No.: CJ-2016-~~FILED IN~~ DISTRICT COURT
OKLAHOMA COUNTY

AUG 1 0 2016

RICK WARREN
COURT CLERK

89

### PETITION

  COME NOW the Plaintiffs, Daniel Galbraith and Sarah Galbraith, and for their causes of

action against Defendant State Farm Fire and Casualty Company, allege and state as follows:

### I.  JURISDICTION AND VENUE

  1. Plaintiffs Daniel Galbraith and Sarah Galbraith are citizens of the State of

Oklahoma and residents of Choctaw, Oklahoma County, Oklahoma.

  2. Defendant State Farm Fire and Casualty Company ("State Farm") is an insurance

company with corporate headquarters and principal place of business in Bloomington, Indiana.

State Farm is licensed to and engaged in the business of insurance in the State of Oklahoma,

including Oklahoma County.

  3. The real property at issue in this case is located in Choctaw, Oklahoma County,

Oklahoma.

  4. The events which give rise to this lawsuit occurred in Choctaw, Oklahoma

County, Oklahoma.

  5. The District Court in and for Oklahoma County has jurisdiction over the parties

under 12 O.S. §§ 132, 137 and 187.



EXHIBIT

1

## FACTS

6.      Plaintiffs hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-5 above.

7.      Plaintiffs are the owners of real property located at 333 Buttermilk Cloud Ridge, Choctaw, Oklahoma County, Oklahoma (the "Residence").  The Residence was custom-built for the Plaintiffs in 2007 and contained numerous specially designed features and amenities to meet the needs of Plaintiffs' family.  Plaintiffs purchased the Residence from the builder in 2008 for $458,000.

8.      Plaintiffs' youngest daughter has Cerebral Palsy and she needs consistent special care for her illness, including dressing and bathing, and requires the use of a wheelchair. Plaintiffs' oldest daughter also suffers from Crohn's Disease requiring treatment with a chemotherapy drug.  Plaintiffs' Residence was designed and built not only to accommodate the special needs of Plaintiffs' family but also to be a sanctuary for Plaintiffs and the children.

9.      The Residence is insured under a Homeowners Policy issued by Defendant State Farm, Policy No. 36-BC-K453-9, providing policy limits for the home in the amount of $535,000.

10.     On or about August 15, 2015, Plaintiff Sarah Galbraith discovered wet carpet in her daughters' bedroom that was determined to be coming from a leak in an adjoining bathroom. Plaintiffs contacted a plumber and State Farm, who directed them to contact Servicemaster, a restoration company used by State Farm.  After inspection, Plaintiffs were told by Servicemaster that the leak was contained and would be relatively inexpensive – less than Plaintiffs' insurance deductible of $5,355 – to repair.  Plaintiffs were also told that their own personal fans would

2

adequately dry the affected area, rather than requiring large commercial fans provided by Servicemaster.

11.     However, approximately one month later, Plaintiffs noticed that their wood floors were buckling, indicating the problem was getting worse rather than improving as represented. The buckling of the floors was of particular concern, as Plaintiffs' youngest child with Cerebral Palsy was unable to negotiate the uneven hallway.

12.     Plaintiffs contacted several contractors to obtain the most cost-efficient estimate, including Proficient Homes, the company that originally built the Residence for Plaintiffs. Proficient Homes' estimate for the water damage was in excess of $55,000.  Proficient Homes' estimate included replacement of the wood floors in the hallway, kitchen and dining room, replacing the custom cabinets, granite and backsplash in the kitchen, and repainting and reglazing the walls and woodwork.  Upon receiving the estimate, Plaintiffs immediately made a claim with State Farm.

13.     On October 30, 2015, Plaintiffs and the Proficient Homes' contractor met with State Farm adjuster Tracey Park at the Residence for an inspection and preparation of State Farm's estimate.  Ms. Park's estimate on behalf of State Farm was only $14,571.38, far less than Proficient Homes'.

14.     On November 13, 2015, Plaintiffs were notified that their claim had been transferred to adjuster Barry Faircloth, who assured them he would get everything fixed.

15.     Plaintiffs had no further communication from State Farm until approximately January 30, 2016, when adjuster Faircloth contacted them to tell them State Farm would not pay for the repairs as estimated by Proficient Homes.  Mr. Faircloth was particularly skeptical that Plaintiffs' custom kitchen cabinets had to be removed and completely replaced to repair the

damaged floors, as recommended by Proficient Homes. Mr. Faircloth accused Plaintiffs of trying to get State Farm "to pay for a kitchen remodel," and directed Plaintiff to get another estimate from Phoenix Restoration, a company frequently used by State Farm.

16.     On February 5, 2016, Phoenix Restoration submitted an estimate of $57,091 (an estimate even higher than that of Proficient Homes). Phoenix Restoration also agreed that the kitchen cabinets had to be completely removed in order for the floors to be replaced.

17.     In an effort to save money on the repairs, Plaintiffs began pulling up the wood floors in the hallway themselves, and discovered mold. Concerned for the health of their children, Plaintiffs contacted State Farm and explained the urgency of the repairs. They were told by the representative to go ahead and execute a contract with Proficient Homes so the repairs could begin, and that State Farm would release money for the down payment upon receipt of the signed contract.

18.     Plaintiffs entered into a contract with Proficient Homes on February 10, 2016. The contract price was $65,998, as the scope of the repairs had expanded since the original estimate. The repairs were scheduled to begin on Monday, February 15, 2016.

19.     On February 12, 2016, adjuster Faircloth again questioned the need for the removal of the kitchen cabinets, and scheduled another meeting with the contractors to reevaluate the claim and the repair estimate.

20.     That meeting was held on February 17, 2016, and included State Farm adjuster Park, who continued to be involved in the claim, the contractor from Proficient Homes, the contractor from Phoenix Restoration and a mold expert. The mold expert told Plaintiffs he could smell the mold as soon as he entered the Residence, and advised them not to pull up any more of

the floor themselves, as a professional was needed to "scrub" the air and contain the mold as the floor was being removed.

21.     Ms. Park informed the Plaintiffs during the February 17 meeting that their policy does not cover mold damage or repair, despite the fact that the mold developed as a result of State Farm's delay in providing properly owed payment to Plaintiffs so that the repairs could begin promptly.

22.     Ms. Park also for the first time informed Plaintiffs that their policy contained payment for additional living expenses, and "offered" to let Plaintiffs and their children stay in hotel while the mold was being remediated.  Plaintiffs were told the additional living expenses also included excess food and mileage costs.

23.     Plaintiffs moved to a hotel within the next few days and ultimately spent approximately five (5) months living in the hotel as a result of State Farm's recalcitrance and delay.[1]

24.     On February 23, 2016, Ms. Park on behalf of State Farm gave Plaintiffs a new estimate of $35,000, and indicated that more money may be available if needed.  Ms. Park delivered a check to be put in escrow for the down payment to get the repairs started.

25.     Plaintiffs were very worried about the approximately $25,000 discrepancy between the contract amount with Proficient Homes and State Farm's estimate, but believed they had no choice but to accept State Farm's payment given the serious mold problem and their children's fragile health.

---

[1] In addition, Plaintiffs were told the charge for the hotel would be billed directly to State Farm.  Instead, the charges were billed to Plaintiffs' personal credit card, causing their credit limit to be reached and the card to be declined.  After significant effort, Plaintiffs were eventually able to get the charges reversed.

26.     The repairs finally began on April 4, 2016 – almost eight months after the leak was first discovered and almost five months after State Farm's adjuster first came to inspect the Home.

27.     On May 12, 2016, during the course of the repairs and after additional disbursements had been made, Plaintiff Sarah Galbraith had a lengthy telephone conversation with Ms. Park.  Ms. Park told her that there was approximately $7,000 of insurance proceeds left from State Farm's estimate – not nearly enough to complete the repairs – and indicated that little additional money would be available.  Mrs. Galbraith asked Ms. Park to send her a full explanation of the estimate breakdown by email, but Ms. Park did not do so.

28.     Mrs. Galbraith had another meeting with adjuster Park on June 3, 2016 to discuss the progress of the repairs and the additional costs that had been incurred as a result of the delay. Ms. Park refused to tell Mrs. Galbraith with specificity what costs State Farm intended to cover or for how much, and refused to memorialize the conversation in writing.   As to the mold, Mrs. Galbraith was told only that it was not covered – Ms. Park refused to issue an official denial letter on behalf of State Farm.  State farm did agree to pay certain additional costs, but not enough for Plaintiffs to pay Proficient Homes as contracted.

29.     In light of State Farm's refusal to compensate them for their loss, Plaintiffs have been forced to borrow the additional funds necessary to complete the repairs, which are still ongoing.  State Farm is also revoking additional living expenses for Plaintiffs; thus, Plaintiffs and their children will be forced to live on the second floor of the Residence while the construction is being completed, which is particularly difficult and stressful given the children's disabilities.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

30.     Plaintiffs hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-29 above.

31.     Plaintiffs are entitled to payment of the full cost repairs to their Home after the deductible from their homeowners insurance policy, which State Farm has refused to pay.

32.     Plaintiffs are also entitled to payment of the full amount of their additional living expenses as set forth in the insurance policy.

33.     State Farm's unreasonably low estimate and offer of payment and refusal to fully compensate Plaintiffs for the loss and their additional living expenses is a denial of the contractual benefits due and owing to Plaintiffs.

34.     Therefore, State Farm has breached the contract of insurance.

35.     As a direct and proximate result of State Farm's breach of the insurance contract, Plaintiffs have suffered damages in excess of $10,000.

## SECOND CAUSE OF ACTION – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

36.     Plaintiffs hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-35 above.

37.     As an insurance company licensed to do business in the State of Oklahoma, State Farm is bound by Oklahoma statutory and common law to honor its contractual obligations to its insureds in good faith.  As such, State Farm has and continues to have a duty to deal fairly and in good faith with Plaintiffs, its insureds.

38.     State Farm breached its duty to deal fairly and in good faith with Plaintiffs by failing to conduct a full, fair and unbiased investigation into the nature and extent of the damage

7

to Plaintiffs' Home, and to offer Plaintiffs' an appropriate amount for repairs based on that investigation.    State Farm disregarded its responsibilities to Plaintiffs in favor of its own profitability.

39.    State Farm breached its duty to deal fairly and in good faith with Plaintiffs by completely failing to assist them with the claims process, choosing instead to ignore Plaintiffs' needs and requests and greatly increase their emotional distress.

40.    State Farm breached its duty to deal fairly and in good faith with Plaintiffs by failing to promptly and appropriately advise them of available coverages under their policy, including additional living expenses.

41.    State Farm breached its duty of good faith and fair dealing by failing to properly advise Plaintiffs of the acceptance or denial of their claim in writing, causing Plaintiffs' additional worry and distress.

42.    As a result of State Farm's breach of its duty to deal fairly and in good faith, Plaintiffs have suffered damages in excess of $75,000.

43.    State Farm's breach of the duty of good faith and fair dealing was intentional and malicious.

44.    Punitive damages should be awarded against State Farm in an amount sufficient to punish State Farm and deter others.

WHEREFORE, Plaintiffs Daniel Galbraith and Sarah Galbraith pray for judgment against Defendant State Farm Fire and Casualty Company for an amount in excess of $75,000, together with costs, interest, reasonable attorney fees, and other relief which this Court deems just and equitable.

Respectfully submitted,

_____
Simone Gosnell Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
FULMER GROUP PLLC
P.O. Box 2448
Oklahoma City, OK  73101
Phone/Fax:    (405) 510-0077
Email:  sfulmer@fulmergrouplaw.com
hlujan@fulmergrouplaw.com
jrowe@fulmergrouplaw.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN
JURY TRIAL DEMANDED**