# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) DANIEL GALBRAITH and<br>(2) SARAH GALBRAITH,<br><br>        Plaintiffs,<br><br>v.<br><br>(1) STATE FARM FIRE AND<br>CASUALTY COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:16-cv-01227-SLP |

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SANCTIONS FOR PLAINTIFFS' SPOLIATION OF EVIDENCE

Defendant State Farm Fire and Casualty Company ("State Farm") moves the Court to enter an order, pursuant to Fed. R. Civ. P. 37 and LCvr37.1, sanctioning Plaintiffs Daniel and Sarah Galbraith for spoliation of evidence – specifically, deleting text messages between Sarah Galbraith and the Plaintiffs' contractor, Jamie Sherman.

Despite a previous court order compelling Plaintiffs to produce all text messages between Mrs. Galbraith and Mr. Sherman, Plaintiffs produced only selected text messages from a limited period of time. Based on Plaintiffs' failure to preserve and produce the text messages, State Farm asks the Court to sanction Plaintiffs by instructing the jury it may infer that the deleted texts were unfavorable to Plaintiffs.

## Background

This action arises out of a water leak in Plaintiffs' home, some two months after which Plaintiffs made a claim under their homeowners' insurance policy to State Farm.

Although State Farm paid benefits under the policy—to the tune of over $90,000—the parties have disagreed about the scope of repairs necessitated by the water leak and the amount owed to Plaintiffs for completed repairs. Plaintiffs also claim that State Farm's handling of their claim violated State Farm's duty of good faith.

This discovery matter was previously before this Court via State Farm's Motion To Compel (Doc. 40), which sought, among other things, an order compelling Plaintiffs to produce text messages between Mrs. Galbraith and Mr. Sherman. Plaintiffs then admitted that Mrs. Galbraith had deleted the requested text messages, and therefore no longer had "possession" of them. Finding that the text messages had "obvious relevance" and were discoverable, the Court ordered Plaintiffs to produce all text messages over which Mrs. Galbraith had possession, custody, or control, stating that "[t]o the extent Plaintiffs do not possess currently copies of the text messages, but they have an avenue to obtain such copies, Plaintiffs are required by the rules of discovery to do so." (Doc. 50, at 8).

Following the Court's order, Plaintiffs produced a limited time frame of text messages between Mrs. Galbraith and Mr. Sherman, dated from August 21, 2016 to April 20, 2017. *See* Exhibit 1. Plaintiffs did not produce any text messages dated prior to August 21, 2016, despite the Court's express acknowledgement that "[a]ny communications with Mr. Sherman—at least for a reasonable period before the date of loss [which was August 15, 2015] and at any time after the date of loss—are within Rule 26(b)(1)'s scope of discovery." (Doc. 50, at 7 n.4). Plaintiffs thus failed to produce any text messages from the period of September, 2015 through July, 2016—the time period during which Plaintiffs claim State Farm was unreasonably delaying the payment of policy benefits. In addition,

{1834603;}

2

for some of the text messages, Plaintiffs produced only one side of the conversation, i.e., the messages sent from Mr. Sherman, without the accompanying responses of Mrs. Galbraith. (*See, e.g.,* Ex. 1, Text Messages, Galbraith 00552-00557).

The failure to produce any of the deleted text messages, even after the Court ordered Plaintiffs to utilize all available avenues in obtaining deleted messages, and the selective editing of the text messages produced—reveals Plaintiffs' intent to deprive State Farm of pertinent evidence.

<u>**Argument and Authorities**</u>

I. **Legal Standard**

Pursuant to Fed. R. Civ. P. 37(e), which governs failure to preserve electronically stored information:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> \* \* \*
> only upon finding that the party acted with the intent to deprive another party of the information's use in litigation may:
> \* \* \*
> instruct the jury that it may or must presume the information was unfavorable to the party[.]

Electronically stored information includes text messages. *See, e.g.*, *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216, 2016 WL 1105297, at \*3 (S.D. Fla. Mar. 22, 2016). Under this standard, State Farm is entitled to an adverse inference instruction because Plaintiffs had an obligation to preserve the text messages between Mrs. Galbraith and Mr. Sherman and failed to do so, failed to preserve the messages with the

intent of depriving State Farm of their use, and the text messages cannot be recovered from any other source.

**II. State Farm is entitled to an adverse instruction due to Plaintiffs' failure to preserve all text messages between Mrs. Galbraith and Mr. Sherman.**

    a. <u>Plaintiffs had a duty to preserve the text messages between Mrs. Galbraith and Mr. Sherman.</u>

Plaintiffs had a duty to preserve all text messages between Mrs. Galbraith and Mr. Sherman because as early as February 2016 they were consulting attorneys regarding State Farm's handling of their water leak claim. They were well aware that Mr. Sherman was in the center of the dispute between them and State Farm, and that their communications with him would be relevant.

Plaintiffs have previously attempted to cast aside any duty they had to preserve text messages with Mr. Sherman by asserting that they are lay people who had no idea they were obliged to preserve the text messages. This argument disregards their counsel's duty to instruct them to preserve evidence. Further, their pretense that they did not know the texts would be important is belied by the fact that Mrs. Galbraith carefully saved her texts with State Farm adjustor Tracey Park during the same time frame. Notably, in her texts with Mr. Sherman just recently produced, Mrs. Galbraith explained to him: "Ok, I'm just trying to keep track. Our lawsuit is filed, and *I'm still trying to keep meticulous records*." (Ex. 1, at Galbraith 0533, message dated 8/23/16 5:21 PM).

Although Mr. Sherman was a third party to the insured-insurer relationship, Plaintiffs had full knowledge that his involvement in the evaluation and repair of the water leak was a central issue in the case. They rely on Mr. Sherman's estimates as evidence that

State Farm did not properly evaluate their claim. It defies logic that Mrs. Galbraith would know to keep 'meticulous records' related to the water leak, but not preserve her communications with Mr. Sherman. Hence, the circumstances strongly suggest that Mrs. Galbraith did not want the substance of her texts with Mr. Sherman revealed.

    b. <u>State Farm has been prejudiced.</u>

State Farm has been prejudiced by Plaintiffs' failure to produce the text messages because the texts are relevant to central issues in this dispute, and are not available from any other source. On June 13, 2018, during deposition, State Farm's counsel asked Mr. Sherman whether he had access to the text messages he had exchanged with Mrs. Galbraith. Mr. Sherman testified the phone he had used to communicate with Mrs. Galbraith had either been destroyed or sold for parts, and that he did not have any of the data from that phone.

State Farm has also been prejudiced because Mrs. Galbraith did not produce her texts with Mr. Sherman prior to her deposition. State Farm's initial discovery requests plainly encompassed her communications with Mr. Sherman ("All non-privileged correspondence of any kind concerning or relating to the Water Leak."). Plaintiffs produced responsive documents giving no indication that they were withholding the text messages with Mr. Sherman.

The text messages that were produced provide State Farm with reason to believe the deleted text messages would have included information material to the issues such as whether Mr. Sherman was encouraging Plaintiffs to seek coverage for damages not covered

by their policy, or was concealing the true replacement costs incurred by Plaintiffs (and submitted to State Farm). These are some examples:

> MR. SHERMAN (9/1/16):
>
> That looks like an insurance claim to me State Farm is just trying to bully you can't prove that that was shotty workmanship i can show you a ton of houses that were installed in the same manner now for one your house passed all city inspections and State Farm insured the house to begin with yes we know State Farm doesn't Cover mold but I'm pretty sure they cover water damage due to it leaking window that has been leaking for probably 5 to 6 years and the only way you found out if you spotted mold so you started holding things back to investigate and on top of that there's no telling how long you went with your raised flowerbeds above your floor level

***

> MRS. GALBRAITH (9/7/16):
>
> Did you ever find out why the appliance guy charged you $4,000 more than he was going to charge me?
>
> MR. SHERMAN (9/7/16):
>
> As for the appliances, the cost he gave you was builder price/wholesale, without my margin
>
> MRS. GALBRAITH (9/8/2016)
>
> About the invoices, how about this. YOU GET ME THE TIMELINE OF THE WORK AND WHEN IT WILL BE COMPLETED AND A COPY OF THE CORRECT CONTRACT AND THEN WE'LL TALK ABOUT INVOICES!!!!!!!!!!!!!!!!!! SHEESH!!!!!!!!!!!!!!!
>
> MRS. GALBRAITH (9/13/2016)
>
> I know I've bugged you before, but I really REALLY REALLY REALLY need an updated signed contract. It's crucial to my case. I don't care if you email it or mail mail it or bring it by or pony express, but I need it. Like in February. The information I have is $65,998 on February 10, 2016. You might double check that out last name is spelled correctly. "Galbraith"- I also need your schedule for completion please. Please please please please. Don't make me beg!!!

(Ex. 1, at Galbraith 00536-38).

These exchanges demonstrate that Mrs. Galbraith and Mr. Sherman regularly discussed issues pertinent to Plaintiffs' claim against State Farm and provides State Farm with a reasonable basis to believe the deleted text messages also included similar

{1834603;}

discussions. Plaintiffs' failure to produce these messages has prejudiced State Farm by the inability to use the text messages in their defense and by the inability to question deponents about the content of the messages.

      c. <u>Plaintiffs intentionally deprived State Farm of evidence</u>.

In December 2017, during her deposition, Mrs. Galbraith revealed the existence of the text messages between her and Sherman:

> Q  I know I've seen the texts that you have given a printout of with Tracey Park.
> A  Uh-huh.
> Q  Do you have a similar group of texts with Jamie Sherman?
> A  I believe so.
> MS. VAHLBERG: You know, Jacob, that's something I would want to see is her texts with Jamie Sherman. We can talk about whether those fit under our discovery requests, but I suspect that they do.
> MR. ROWE: We'll take a look, and I'll have her gather those.
> MS. VAHLBERG: Okay.

Exhibit 2, Excerpt from S. Galbraith dep., 77:4-17. Notably, at the time, Mrs. Galbraith did not testify she no longer possessed the texts or could not access them. Given that by April 2018, four months later, she no longer has the texts "in her possession," she must have deleted them between December 2017 and April 2018, during the active discovery phase of this litigation—i.e., Plaintiffs intentionally deprived State Farm of evidence.

Plaintiffs' conduct demonstrates the requisite intent to warrant an adverse inference instruction. The United States District Court for the Southern District of New York recently considered the intent required for sanctions for failure to preserve electronically stored information:

> Defendants have provided this court with sufficient evidence, both direct and circumstantial, that: (1) Plaintiff communicated

{1834603;}

7

> with Mr. Berger via email[]; (2) Plaintiff failed to take any reasonable steps to preserve these communications[]; and/or (3) Plaintiff failed to produce these communications in violation of her discovery obligations. The logical inferences that can be drawn from these facts are that Plaintiff: (a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in her possession but has failed to produce them. Any of these scenarios satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e).

*Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017). The evidence here demonstrates that Mrs. Galbraith communicated with Mr. Sherman, Mrs. Galbraith failed to take reasonable steps to preserve these communications, and Plaintiffs failed to produce these communications in violation of her discovery obligations. Just as the *Ottoson* court drew the logical inferences that the failure to produce the emails was intentional, so too should this Court conclude that Plaintiffs' conduct in failing to produce the text messages satisfies the requisite intent to impose sanctions pursuant to Rule 37(e).

Moreover, the texts are indisputably relevant to the issues in the case, which include determining whether State Farm was responsible for the delays Plaintiffs experienced, or whether, instead it was Mr. Sherman's delay in getting work done that cause State Farm to have to pay much more than should have been necessary, such as six month of hotel expense. *See Ottoson*, 268 F. Supp. at 582. (explaining that the missing evidence was "indisputably relevant" to Plaintiff's case and that "she knew what would happen to her case if there was no evidence of the Report's existence.").

State Farm requests that the Court sanction Plaintiffs by instructing the jury to infer from the absence of the text messages between Mrs. Galbraith and Jamie Sherman that it

was not State Farm who was responsible for the unreasonable delay in completing repairs at Plaintiffs' house.

## Conclusion

Plaintiffs knew that the accuracy of Mr. Sherman's estimates and the length of time he took to complete repairs were central issues in this case, yet intentionally did not preserve communications with Sherman pertaining to these issues. Indeed, in December 2017, when State Farm's counsel asked Mrs. Galbraith during deposition whether she had texts with Mr. Sherman, she admitted she did. She said nothing about having deleted the texts. It therefore stands to reason that Mrs. Galbraith deleted the texts after she knew that State Farm's counsel was asking for copies of them. Mrs. Galbraith's 'meticulous' preservation of her communications with State Farm reveals that she understood the importance of preserving materials related to their claim. Yet she chose to preserve only those documents that believed to be beneficial to her side of the story. Plaintiffs have failed to recover the lost text messages and State Farm has no other means of obtaining these messages. Plaintiffs' conduct warrants sanctions; therefore, State Farm is entitled to the requested adverse inference instruction.

Respectfully submitted,

*/s/ Mia Vahlberg*
Mia Vahlberg, OBA #20357
Katherine E. McDonald, OBA #32064
GABLEGOTWALS
1100 ONEOK Plaza
100 W. Fifth Street
Tulsa, OK 74103-4217
(918) 595-4800 | (918) 595-4990 (fax)
*mvahlberg@gablelaw.com*
*kmcdonald@gablelaw.com*

***Attorneys for Defendant***
***State Farm Fire and Casualty Co***.

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2018, I electronically transmitted the foregoing document to the clerk of the court using ECF system for filing and transmittal of a notice to the ECF registrants of record.

*/s/ Mia Vahlberg*
Mia Vahlberg