# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANIEL GALBRAITH and<br>SARAH GALBRAITH,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND<br>CASUALTY COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: CIV-16-1227-R |

## PLAINTIFFS' OBJECTION TO DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SANCTIONS FOR PLAINTIFFS' SPOLIATION OF EVIDENCE

COME NOW, Plaintiffs Daniel and Sarah Galbraith (collectively "the Galbraiths"), and respectfully request the Court deny *Defendant State Farm Fire and Casualty Company's Motion for Sanctions for Plaintiff's Spoliation of Evidence* ("Motion for Sanctions") [Doc. 74].

## Introduction

In August 2016 Plaintiffs discovered a wet spot in one of the rooms adjacent to a jack-and-jill bathroom in their home. They then contacted their State Farm insurance agent who advised them to call a water remediation company, which they did. Upon examining the flooring, the water remediation specialist informed the Galbraiths the damage was not extensive enough to warrant remediation service and that they should simply dry the areas with fans, which the Galbraiths did.

Several weeks later, the Galbraiths noticed their hardwood floor cupping in the

1

hallway adjacent to the jack-and-jill bathroom. They contacted Jamie Sherman, a contractor who had assisted in the construction of their home, to look at the water damage and provide a repair estimate. In late October, Mr. Sherman provided an estimate to repair the water damage in an amount in excess of $50,000.00 and, upon receipt of the same, the Galbraiths initiated the homeowners insurance claim underlying this action.

Within days, State Farm dispatched Tracey Park to inspect the home and adjust the loss. Ms. Park estimated the replacement cost of the loss to be a little over $14,000.00 and provided the Galbraiths an actual cash value payment for the loss in the amount of approximately $4,000.00. Shortly thereafter, Ms. Galbraith sought advice from State Farm on how the disparate estimates from Mr. Sherman and State Farm would be reconciled. Unfortunately, State Farm provided Ms. Galbraith no counsel and the claim lie dormant for nearly 3 months. In late January 2016, when State Farm re-engaged in the claims handling process, its claims handlers treated the Galbraiths in an unreasonably adversarial way, and unreasonably delayed the investigation and payment of additional benefits due to the Galbraiths. This action followed.

Presently before the Court is Defendant's *Motion for Sanctions* in the form of a spoliation instruction based upon Plaintiffs inability to produce text messages between herself and Jamie Sherman, a contractor who oversaw repairs on Plaintiffs' home resulting from a water loss. The parties have previously briefed this issue in relation to Defendant's first Motion to Compel [Doc. 40] filed on March 9, 2018. *See State Farm's Reply in Support of its Motion to Compel* [Doc. 43] and *Plaintiffs' Sur-Reply to State Farm's Reply in Support of its Motion to Compel* [Doc. 47]. After argument on Defendant's Motion to

Compel, the Court entered its *Order* [Doc. 50] of April 27, 2018. In this Order, the Court ordered the production of text messages "relating to the Water Leak and, in regard to Defendant's request for sanctions, indicated:

> "As to State Farm's request for an adverse inference or other sanction for spoliation due to Plaintiffs' deletion of Ms. Galbraith's text messages with Mr. Sherman, the Court finds this issue insufficiently briefed at this time. Neither party could inform the Court at the hearing on State Farm's motion whether Mr. Sherman or another third party is able to produce copies of the text messages, which may bear on prejudice. *See Albertson's, LLC v. HFC, Inc.*, No. CIV-16-276-HE, 2017 WL 4128316, at *2 (W.D. Okla. Sept. 18, 2017) ("A spoliation sanction is proper where: (1) a party had a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." (quotation marks and citation omitted)). Nor has either party submitted briefing regarding how courts treat when the duty to preserve evidence arises as to communications with insurance-claim-involved third parties. Absent more comprehensive briefing regarding whether an adverse inference or other sanction is proper, the Court declines to decide this issue now, without prejudice to State Farm re-submitting this issue so it is squarely before the Court."

After the entry of the April 27, 2018 Order, Plaintiffs produced nearly 30 pages of text messages between Mrs. Galbraith and Mr. Sherman spanning from August 2016 until April 2017. These text messages are attached to Defendant's Motion for Sanctions as Exhibit 1 and represent *all* previously undisclosed text messages Ms. Galbraith is in possession, custody, or control of between herself and Mr. Sherman.[1]

---

[1] The undersigned, with the assistance of Ms. Galbraith conducted an investigation to determine whether any additional text messages were within her possession, custody, or control. Plaintiffs further contend said investigation is protected by the attorney work-product and attorney-client privilege. However, the undersigned has informed opposing counsel that Plaintiffs are willing to make Ms. Galbraith's phone available for examination if requested. Defendant has not asked to do so.

As was their position in *Plaintiffs' Sur-Reply to State Farm's Reply in Support of its Motion to Compel* [Doc. 47], Plaintiffs contend that Defendant has not proven through evidence or argument that Rule 37 sanctions are appropriate in this case.[2]

**<u>Argument and Authority</u>**

The standard for the imposition of sanctions is set forth in Rule 37(e) of the Federal Rules of Civil Procedure which reads:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

The current iteration of Rule 37, as amended in 2015, "forecloses reliance on inherent authority or state law to determine when certain measures should be used" and sets forth a clear and uniform procedure for a federal district courts ruling on a request for

---

[2] Plaintiffs acknowledge the Court's ruling that text messages between Ms. Gabraith and Mr. Sherman related to the water loss are discoverable. Order [Doc. 50], p. 8. Notwithstanding, Plaintiffs incorporate the arguments set forth in *Plaintiffs' Sur-Reply to State Farm's Reply in Support of its Motion to Compel* [Doc. 40] by reference herein.

Rule 37 sanctions. Fed. R. Civ. P. 37, advisory committee's note. A party seeking sanctions must make a showing that (A) information should have been preserved, (B) a party failed to take reasonable steps to preserve it, and that (C) it cannot be restored or replaced through additional discovery. Provided a moving party can meet these elements, the court must then examine whether the movant has been prejudiced *and* whether the non-moving party acted *intentionally* with the *intent* to deprive another party of the information in litigation. Finally, "[t]he amended Rule 37 does not permit an adverse inference instruction or other severe sanctions for [a litigant's] negligence." *Living Color Enterprises, Inc. v. New Era Aquarium, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, *6 (S.D. Fla. Mar. 22, 2016).

If the party seeking Rule 37 sanctions meets the elements set forth above, the Court *may* award sanctions. However, any sanctions should be appropriately tailored to the violation made by the non-moving party. Spoliation sanctions should be designed to deter future spoliation by shifting the risks associated with the deletion of electronic data onto the individual in control of the data. *Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F.Supp.3d 570, 580 (S.D.N.Y 2017). Further, adverse inference instructions should serve to "ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the arty party that destroyed evidence." *Id.* at 584 (internal quotations and citations omitted).

1. **The duty to preserve text messages.**

State Farm contends that Ms. Galbraith was obligated to preserve text messages between herself and Mr. Sherman as early as February 2016. However, the duty to preserve

electronically stored information does not arise under Rule 37 until a party knows or should have known that litigation was imminent. *Equal Employment Opportunity Commission v. Jetstream Ground Services,* 878 F.3d 960, 965 (10th Cir. 2017)(citing *Turner v. Pub. Serv. Co. of Color.*, 563 F.3d 1136, 1149 (10th Cir. 2009). Although Plaintiffs believed that something was amiss in February 2016, it is a stretch to claim that they knew that litigation would be necessary or was imminent. Plaintiffs believed State Farm would live up to its obligations without the need for additional litigation. That Plaintiffs did not believe litigation would be necessary in February 2016 is best proven by the fact they consulted with attorney Nichole Moisant (now Gillett), but did not retain her services. Had Plaintiffs believed litigation was necessary or imminent, it stands to reason that they would have immediately retained counsel.

State Farm further argues that Plaintiffs knew that Mr. Sherman would be at the center of their dispute with State Farm. Again, State Farm misses the mark. In February 2016, the Galbraiths did not believe that litigation was necessary or imminent, rather they were beginning to explore their options should they not be able to resolve their dispute with State Farm. At this point in time, the Galbraiths had no conflict or disagreement with Mr. Sherman and had no reason to believe that text messages between he and Ms. Galbraith could, at some point, become relevant evidence in an insurance bad faith case.

State Farm also attempts to twist the words of Ms. Galbraith to support its position noting her desire to "keep meticulous records." [Doc. 74, p. 4]. First, State Farm has disregarded the time at which the message it quotes was written. The message quoted was set *after* the filing of the instant lawsuit and involved information related to the original

6

construction and repair of her home's floor. Additionally, State Farm disregards the lack of legal sophistication of Plaintiffs. The Committee Notes to Rule 37 instruct a Court ruling on potential Rule 37 violations to consider "[t]he [non-moving] party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." Fed. R. Civ. P. 37, advisory committee's note. The Galbraiths are not serial litigants, nor do they have any advanced training in the interpretation of the Federal Rules of Evidence. They are average Oklahomans attempting to navigate a large and confusing insurance claim. State Farm has provided no compelling evidence or argument that the Galbraiths had reason to believe that text messages with their contractor should have been preserved.

**2. State Farm is not prejudiced.**

State Farm has yet to articulate precisely what information it believes is contained within the unavailable text messages between Ms. Galbraith and Mr. Sherman. Instead, it simply concludes that "the texts are relevant to central issues in this dispute." However, it has failed to set forth a reasonable theory regarding the content of these missing messages that would, in fact, prejudice it.

State Farm has stated that it has reason to believe that the text messages would have shown that Mr. Sherman was encouraging Plaintiffs to seek insurance benefits for items not associated with the water loss or to improperly increase the benefits paid pursuant to their water claim. In support of this argument, State Farm again attempts to pigeonhole text message exchanges between Ms. Galbraith and Mr. Sherman to fit its theory of the

case. For example, Mr. Sherman's 9/1/16 text message does not relate to the water loss at issue in this case. It relates to the shoddy workmanship of those who built their home (a crew Mr. Sherman was once a part of). State Farm will not be prejudiced by its inability to admit text messages about other water damage unrelated to the claim at issue here.

The remaining messages quoted in State Farm's Motion for Sanctions involve Ms. Galbraith attempting to leverage Mr. Sherman to perform the home repair services she paid him to perform and his failure to do so. Plaintiffs have both indicated Mr. Sherman failed to perform all of the home repairs he was paid to complete. Both Mr. and Ms. Galbraith have testified to this fact and that they were dissatisfied with his services. Nevertheless, the Galbraiths dispute with Mr. Sherman in September 2016 has no relevance to State Farm's unreasonable delay in the handling of this claim from November 2015 until February 2016, nor does it have anything to do with State Farm's three month delay in assisting the Galbraiths in the acquisition of Additional Living Expense benefits.

State Farm also argues that the text messages would prove Mr. Sherman was the true cause of delay in this matter and that his delay resulted in State Farm paying "much more than should have been necessary." *See Motion for Sanctions* [Doc. 74], p. 8. This argument in favor of a spoliation sanction fails for several reasons. First, Mr. Sherman did not begin any repairs to the Galbraith home until late February / March 2016, *after* State Farm made additional benefit payments to the Galbraiths. Mr. Sherman's delay in repairing the home cannot alter or justify State Farm's claims handling conduct from months before. Similarly, Mr. Sherman's delay in repairing the Galbraith home cannot alter or justify State Farm's handling of the Galbraith's claim for Additional Living

8

Expense benefits. Finally, that Mr. Sherman was to blame for some construction delay after February 2016 is not in dispute. It makes little sense for Plaintiffs to delete messages that confirm facts they are willing to state under oath. Such conduct seems far more like ignorance and / or negligence than a bad faith intent to deprive.

**3.     Culpability of Plaintiffs.**

As set forth above, if a party seeking Rule 37 sanctions can show that an opposing party failed to take reasonable measures to protect irreplaceable data that should have been preserved, the Court is faced with determining whether there has been a clear showing that the non-moving party acted in bad faith before imposing severe sanctions such as an adverse inference instruction or dismissal. *See Equal Employment Opportunity Commission v. Jetstream Ground Services,* 878 F.3d 960, 965 (10th Cir. 2017) ("[I]f the aggrieved party seeks an adverse inference to remedy spoliation, it must also prove bad faith."). This has been the rule in this jurisdiction as well. *See Hinshaw v. Dolgen Corp., LLC*, No. 12-CV-277-D, at *5 (W.D. Okla. Oct. 11, 2013) (denying motion for spoliation sanctions as the movant provided no fact or evidence that the non-movant willfully destroyed evidence) and *Swanda Brothers, Inc. v. Chasco Constructors, Ltd. LLP*, 08-CV-199-D, *7 (W.D. Okla. Sept. 25, 2012) ("Where a party seeks sanctions for destruction of documents, it bears the burden of showing the party to be sanctioned acted in bad faith."). State Farm's motion must be denied as it has failed to provide any fact or argument that would tend to support a finding of bad faith by Plaintiffs. Instead, it presents the Court with the *Ottoson* opinion from the U.S. District Court for the Southern District of New York.

In *Ottoson,* the plaintiff appeared to manufacture evidence, influence the statements of potential witnesses, and cover up her trail by deleting data and obstructing further attempts to locate it. Plaintiffs here have demonstrated none of this type of obstructionist conduct. Plaintiffs have investigated the existence of text messages with Mr. Sherman and complied with this Court's Order by producing that which their investigation yielded. Moreover, Plaintiffs have made the phone on which the texts were sent and received available to State Farm and State Farm has refused to examine it. Their conduct is easily distinguishable from the plaintiffs in *Ottoson*.

**4.    Additional Efforts to Replicate the Unproduced Text Messages.**

The final reason that State Farm's motion must fail is that it has not availed itself of other avenues by which it could replicate the information it believes were contained within Ms. Galbraith's text messages with Mr. Sherman. As mentioned above, Plaintiffs have produced all text messages with Mr. Sherman they can, but State Farm has made little effort to find an alternative means of gathering the information it now claims prejudices them.

Approximately one month ago, State Farm deposed Mr. Sherman. State Farm questioned Mr. Sherman about the telephone he used when working on the Galbraith home and learned that he could no longer afford to pay the bill and no longer possesses the same. State Farm did not inquire of Mr. Sherman which company provided Mr. Sherman's cellular phone service and did not attempt to obtain Mr. Sherman's text messages with Ms. Galbraith via document subpoena to his cellular provider. State Farm also had in its possession approximately 30 pages of text messages between Mr. Sherman and Ms. Galbraith at the time of this deposition, text messages it now claims is critical to its defense

and which it also claims do not contain all of Ms. Galbraith's responsive texts. Despite their apparent importance, State Farm asked only one question related to their text messages:

> Q: "She says, 'I know I've bugged you before, but I really, really, really need an updated, signed contract. It's crucial to my case. I don't care if you email it or mail it or bring it by Pony Express, but I need it. Like in February. The information I have is $65,998 on February 10, 2016.
> So I'm trying to understand why she sent you this text. Can you explain it."
>
> A: Because what happened was, in the original contract, I had her last name spelled wrong. I think I had g-a-l "braith" in all her documentation."

[Ex. 1. Deposition of Jamie Sherman, p. 112, lines 8-21].

If the text message exchanges between Ms. Galbraith and Mr. Sherman are as valuable to State Farm's defense as it now claims they are, it stands to reason it would have exhaustively questioned Mr. Sherman on the content of the nearly 30 pages of messages it possessed at the time of his deposition and how it could obtain any additional information related to these messages via Mr. Sherman. However, it did not do so. One can only infer that State Farm refused to seek this information from Mr. Sherman in an attempt to bolster the motion currently before this Court in hopes of receiving an adverse inference instruction.

## **Conclusion**

State Farm's Motion for Sanctions should be denied. State Farm has failed to provide evidence sufficient to prove that Plaintiffs were obligated to preserve text messages with Mr. Sherman and precisely when that obligation began. State Farm has also failed to

make a credible argument that it has been prejudiced by the non-disclosure of these text messages or that Plaintiffs have acted in bad faith or with an intent to deprive it of evidence in this action. Although State Farm has presented several theories as to the content of these messages, none fit within the picture painted by the thousands of documents previously produced in this case. Moreover, if State Farm's theories were true, it would not be prejudiced as the subject matter of the texts either do not relate to the claims made by Plaintiffs here or pertain to facts on which both parties agree. Finally, State Farm's deposition questioning of Mr. Sherman reveal the true nature of this motion, the acquisition of a strategic advantage. State Farm refused to take advantage of an opportunity to question Mr. Sherman about the content of his messages with Ms. Galbraith and how it could elicit those messages from an alternative source.

For these reasons, Plaintiffs respectfully request that Defendant's Motion for Sanctions be denied.

Respectfully submitted,

/s/ Jacob L. Rowe
Simone Fulmer
OBA #17037
Jacob L. Rowe
OBA #21797
Andrea R. Rust
OBA #30422
FULMER SILL, PLLC
1101 N. Broadway, Suite 102
P.O. Box 2448
Oklahoma City, OK 73103
Phone/Fax: (405) 510-0077
sfulmer@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for Filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mia Vahlburg
GableGotwals
1100 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103-4217
**ATTORNEYS FOR DEFENDANT
STATE FARM FIRE AND
CASUALTY INSURANCE COMPANY**

/s/ Jacob L. Rowe
Jacob L. Rowe